**FIDELITY VOICES, INC., et al.,**
**Appellants,**

v.

**FEDERAL COMMUNICATIONS COM-**
**MISSION, Appellee,**

**WNJR Radio Co., a partnership,**
**Intervenor.**

**No. 72–1434.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 12, 1973.

Decided April 13, 1973.

———◆———

Benedict P. Cottone and David Meyers, Washington, D. C., for appellants.

Gregory M. Christopher, Counsel, F. C. C. with whom John W. Pettit and Joseph A. Marino, Associate Gen. Counsel, F. C. C., were on the brief for appellee.

John P. Bankson, Jr., Washington, D. C., with whom William M. Barnard, Washington, D. C., was on the brief, for intervenor, WNJR Radio Co.

Before LEVENTHAL and ROBB, Circuit Judges, and WILLIAM J. JAMESON,* Senior United States District Judge for the District of Montana.

PER CURIAM:

This is an appeal from an order of the Federal Communications Commission granting Intervenor, WNJR Radio Co., interim authority to operate radio station WNJR, Newark, New Jersey. The facts are presented in detail in the Commission's orders [1] and may be summarized as follows. In 1968, the FCC

---

* Sitting by designation pursuant to § 28 U.S.C. 294(d).

[1]. 32 F.C.C.2d 758, 23 P & F Radio Reg.2d 424 (1971), reconsideration denied, 34 F.C.C.2d 923, 24 P & F Radio Reg.2d 123 (1972).

refused to renew the license of WNJR. Thereafter, nine individual parties filed applications to take over permanent operation of the station. These applications were docketed for comparative hearings. During their pendency, the City of Newark was granted temporary authority to keep WNJR on the air on an emergency basis. Recognizing that the City was prepared to operate the station only as a stop-gap until December 31, 1971, and that further interim measures would be needed, the FCC announced that it would accept applications for interim operating permits, and sought to encourage participation from among the would-be regular licensees.

Although various individual applications for interim authority had previously been filed, it was not until December 6, 1971, that the first joint application—filed by WNJR Radio Co.—was accepted for filing. On December 13, a joint interim application was lodged with the Commission by North Jersey Radio, Inc., a group composed of two of the Appellants, one of whom had previously filed an individual application for interim authority. The next day two others among the Appellants (Fidelity Voices, Inc. and Sound Radio, Inc.) filed objections to the WNJR Radio proposed joint agreement. On December 15, the Commission adopted an order (issued December 21) granting interim operating authority to Intervenor, under the terms of the WNJR Radio agreement. No mention was made of the competing application of North Jersey Radio. This was later dismissed as moot, by a letter from the Commission dated December 28. Appellants' petition for reconsideration was denied on April 12, 1972.

This court is concerned with various aspects of the pending case, and their possible impact in combination with each other. They may be identified as follows:

1. We are concerned over the procedural stance of a "withdrawal" by the individual station upon the filing of a later joint application. The Commission determined that the applications of the three companies combined to form WNJR Radio Co., which were filed individually, had vitality as individual applications for purposes of measuring the date on which favorable action could be taken. If their joining together in an application of WNJR Radio Co. had been taken as an abandonment of the individual applications, the Commission would obviously have been acting improperly in granting such application less than 30 days after the acceptance for filing of the joint application.[2] Yet the FCC seems to have reflected a quite different procedural premise when it disposed of the application filed by North Jersey Radio, Inc., even though it was still pending as an individual application in December, on the ground that it had been "withdrawn" by the request to be combined with another application.

2. We are concerned whether the Commission has really focused on the point raised by petitioners in objecting to the provision of the intervenor group, WNJR Radio Co., that the employees of the previous licensee must be retained unless dismissed for cause. Several of these employees had committed themselves to and identified themselves with particular applicants for permanent operating authority who had joined in WNJR's application for a temporary authorization. The FCC, on reconsideration, sought to soften the problem by stating that these employees would only have the same rights as other employees, and that there was a general disposition to keep on board the employees who had been operating for the previous licensee.

The FCC does not seem to have focused at all upon the substantial problem on the merits identified by petitioners before us—that this protection against dismissal except for cause must be considered in combination with provisions of the WNJR partnership agreement that no new partner adhering to the

---

2. Communications Act of 1934, § 309(b)(1), 47 U.S.C. § 309(b)(1); 47 CFR § 1.580.

■■■■■

group can bring in talent.[3] This raises a question whether the agreement was truly "open-ended" within the meaning of our prior decision on interim authority.[4]

3. In essence petitioners were objecting that the structure of the WNJR agreement was not truly open-ended, because it invited new members into the organization only upon an assumption that the operation would be conducted by nine key employees being identified with two of the applicants. Petitioners raised the question why there was any need for those employees to be "frozen in" in this manner. Although petitioners had no present intention that any of these employees be removed, they wish to be on equal comparative status, and claim this special freezing, and security for employees having long term identification with particular applicants, is likely to raise problems. This point requires consideration.

4. We appreciate that the FCC was acting under the impetus of a need for urgent action, since the City of Newark was proposing an almost immediate withdrawal from the support of this station. However, it does not expressly appear that the FCC gave consideration to the alternative of 90-day authorizations, as an emergency matter, such as it later provided in the *Green County* case.[5]

\* \* \*

In sum, a substantial question on the merits was not considered by the FCC, which acted on the basis of a procedural ground that is flawed by other action of the FCC in the proceeding, that on its face seems to reflect a divergent approach. In the interest of justice, 28 U.S.C. § 2106, we remand for further consideration of the interim authority issue. We do not necessarily say that an evidentiary hearing is required. But certainly an appropriate procedure for presentation of the issues must be adopted. Whether that proves to involve presentation of evidence, or appropriately may be handled in some other way, is for consideration in the first instance by the Commission.

Reversed and remanded.[6]

---

3. WNJR Radio Co. Partnership Agreement, ¶ 27:

. . . . [T]he following persons, each of whom is a principal in an Inactive Partner, shall be retained and employed in the respective positions they occupied as employees of the prior licensee of WNJR . . . and neither the Managing Partner nor the General Manager of the station shall discharge any of these persons from their respective positions without cause shown. No other person who is or becomes a principal in an Inactive Partner shall be employed at the station.

4. Beloit Broadcasters, Inc. v. FCC, 125 U.S.App.D.C. 29, 365 F.2d 962 (1966). *See* Community Broadcasting Co. v. FCC, 107 U.S.App.D.C. 95, 274 F.2d 753 (1960).

5. Green County Broadcasting Co., 36 F.C.C.2d 74, 24 P & F Radio Reg.2d 966 (1972).

6. Commission counsel at oral argument concluded that the case was mooted because the petitioners seeking review had agreed to merge, contingent upon FCC acceptance for filing of their merger petition, and that this has been agreed to by the FCC. We think this matter should also be considered in the first instance by the FCC. Offhand we see no reason why an open-ended interim authority agreement that was put in a form acceptable to, say, 9 companies, would be mooted because three of these companies had decided to merge. The invitation of WNJR for others to join its agreement would presumably extend to a merged company, as well as to three individual companies. And the merged company would have the same right to an unslanted structure as the merging companies had. These are only preliminary reflections. The matter must await focusing in the light of the FCC's consideration.